Original

RECEIVED
JAN 1 0 2005
0 + 2
U.S.C.A. 3rd. CIR.

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

EX PARTE, Antonio L. Horne Sr.,  :  Docket No. 1:CR-oo-274
           Petitioner                 United States District Court
                              :  Middle District Pennsylvania

            v.               :  18 U.S.C. sec. 922(g) and
                              :            924(a)(2).

UNITED STATES OF AMERICA      :  United States Circuit Judge
                                  Honorable Fuentes
                            :


REQUEST FOR CERTIFICATE OF APPEALABILITY

    Comes petitioner pursuant 28 U.S.C. sec. 2253(c)(1)(1994/Supp. 111 1997) avers the following in support;

    1. Petitioner appeals from the final order of the United States Middle District Court, order, December 22, 2004, denying relief under 28 U.S.C. sec. 2255 and any relief for applying for certificate of appealability before the district court. The district court stated in its order, that our denial of a certificate of appealability does not prevent him seeking a certificate of appealability from the court of appeals. See Federal Rule of Appellate Procedure 22.

    2. Petitioner recieved the above order December 28, 2004, via U.S. Mail, this request for United States Circuit Judge Fuentes to issue certificate of probable cause, pursuant In re Burwell, 350 U.S. 521, 100 L.Ed. 666, 76 S.CT. 539 (1956).

FACTS

On date September 9, 2004 petitioner filed timely 2255 motion
to vacate conviction to the district court. The basis for the
motion to vacate was, the United States Government relies on, uti-
lizes, and casts a blind eye to perjured testimony, to justify its
inception in the stopping petitioners vehicle, seizing said vehic-
le, conducting a roadside inventory search, and subsequently towing
vehicle into police station where a search ensued and firearm sei-
zed therefrom. In its briefs to the courts, the United States Gover-
nment relies upon the testimony offerred by Harrisburg Patrolwomen
Susan J. Crouser, offerred into the record at the suppression hear-
ing before the United States District Court on January 10, 2001,
i.e., pertaining to a "flyer-bulletin-BOLO". This testimony has ob-
structed the actual truth of the factual circumstances, and what is
worst, has been known to the government at all times as false and
perjured testimony. Such testimony violates the Fourteenth Amend-
ment due process clause, and underscores the entire foundation upon
which any court can determine the propriety of the BOLO-flyer-bul-
letin under the Fourth Amendment as outlined in United States V.
Hensley, 469 U.S. 221 (1985) id. at 233, Held:

> "It is the objective reading of the flyer or
>
> bulletin that determines whether other police
>
> (469 U.S. 233)
>
> officers can defensibibly act in reliance on it".
>
> cf. Terry, 392 U.S. at 21-22, 20 L Ed 2d 889, 88
>
> S Ct 1868, 44 Ohio Ops 2d 383 ("it is imperative
>
> that the facts be judged against an objective
>
> standard:) (emphasis added) Terry, 392 U.S. at 21.

"Whether the officer's actions was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place". Terry, 392 U.S. id. at 20. Also see Hibel V. Sixth Judicial District Ct. No. 03-5554, 542 U.S._____, 159 L Ed 2d 292, id at 302, 124 S Ct_____. Decided June 21, 2004.

In the instant matter, the subject United States District Court committed a misstep. It accepted perjured testimony as fact. It allowed the Government, the United States of America, to utilize and rely on perjured testimony to justify its inception, when the Government knew the perjury existed. It aslo misapplied the precedents addressing aspects of the Fourteenth and Fourth Amendments. Through the remedy of issuance of certificate of appealibility these matters can be corrected.

At the subject suppression hearing, Patrolwomen Crouser testified as follows regarding the basis for the Fourth Amendment stop of Mr. Horne:

> Q. What did you do from that point in your efforts to find
>    Mr. Horne?
>
> A. We had sent out a Countywide "BOLO" to watch out for
>    Mr. Horne's van.

(See Brief of Appellee, Appendix, In the United States Court of Appeals for the Third Circuit, Case No. 02-2649, Appellee's Supplemental Appendix, Supp. App. 6, lines 22-25).

However, the BOLO announcement from the Harrisburg Police department was simple, direct, and conclusory and contained the following information:

"DCP/P NOTIFIED TO BE ON THE LOOK OUT FOR THIS

SUBJECT. DEFENDANTS WIFE LIVES AT 1075 "C"

HURON DRIVE HBG. PA 17111.

THEY WERE ADVISED THAT WE HAVE CHARGES PENDING

ON ANTONIO HORNE AND THAT HE IS TO BE 10-32...

THEY WERE ALSO ADVISED THAT THE DEFENDANT HAS

A CHARGE OF UCR NO. 0100 IN THE PAST...

****************USE CAUTION*******************

FORNESICS NOTIFIED TO RESPOND...0209

U-25 CLR...WILL DO A SUP. REPORT.

There is not a "Scintilla of Evidence" in the record, "BOLO"
flyer-bulletin, justified at its inception, or, articulable hunch
to stop and seize Mr. Horne's van and conduct a search. See Brine-
gar V. United States, 338 U.S. 160, 69 S Ct at 1310-1311; and this
means less than evidence would justify condemnation of conviction,
as Marshal, C.J., said for the court more than a centry ago in,
Locke V. United States, 7 Cranch 339, 3 L Ed 364.
(See Brief of Appellant, Appendix, the BOLO, filed in the United
States Third Circuit Court of Appeals, Case No. 02-2649, Appendix
Volume 1, Memorandum page 2, Volume 2, page 43/44, filed by Dist-
rict Judge William W. Caldwell).

According to Patrolwomen Crouser's testimony, there was a public
announcement to watch out for Mr. Horne's van. Based on this testi-
mony, officer's stoped Mr. Horne's van on the day in question and
proceeded to search it incident to an inventory prior to towing.

Patrolwomen Crouser, however, knew that this testimony of hers was false. And so did the Government. Such use and reliance on false testimony inherently taints the sanctity of the due process requirements and must be remedied by issuance of certificate of appealability. The falsity of the testimony is clearly reflected when compared to the actual BOLO announcement. In fact, the United States has never objected to the petitioners inclusion of the BOLO in any of its prior filings. The BOLO clearly indicates no metion of a van. (See Appellants Brief, U.S. Third Circuit Court Appeals Case No. 02-2649, Appendix Volume 1, page 2; Appendix Volume 2, pages 43/44). "Such a lie must be addressed by this court for it to ever seek justice."

The Supreme Court of the United States Held In: Napue V. Illinois, 360 U.S. 264, 79 S Ct 1173, 3 L Ed 2d 1217, id. at 360 U.S. 269, held: First it is established that a conviction obtained through use of false evidence, known to be such by representives of the State, must fall under the Fourteenth Amendment. Mooney V. Holohan, 294 U.S. 103, 55 S Ct 340, 79 L Ed 791; Plye V. State of Kansas, 317 U.S. 213, 63 S Ct 177, 87 L Ed 214; Curran V. State of Delaware, 3 Cir. 259 F.2d 707. See State of New York ex rel. Whitmen V. Wilson, 318 U.S. 688, 63 S Ct 840, 87 L Ed 1830, and White V. Regan, 324 U.S. 760, 65 S Ct 978, 89 L Ed 1348. Compare Jones V. Commonwealth of Kentucky, 6 Cir. 97 F.2d 335, 338, with In re Sawyer's Petition 7 Cir. 229 F.2d 805, 809. Cf. Mesarosh V. United States, 352 U.S. 1, 77 S Ct. 1, 1 L Ed 2d 1.  The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.

Alcorta V. State of Texas, 355 U.S. 28, 78 S Ct 103, 2 L Ed 2d 9; United States ex rel. Thompson V. Dye, 3 Cir. 221 F.2d 763; United States ex rel. ALmeida V. Baldi, 3 Cir. 195 F.2d 815, 33 A.L.R.2d 1407; United States ex rel. Montgomery V. Regan, D.C. 86 F.Supp. 382. See generally annotation 2 L Ed 2d 1575.

The principle that a State may not knowingly use false evidence, including <u>false testimony</u>, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness testifying falsely that a defendant's <u>life</u> or <u>liberty</u> may depend. As stated by the New York Court Appeals in a case very similar to this one, People V. Savvides, 1 NY.2d 554, 557, 154 NY.S.2d 885, 887, 136 NE.2d, 853, 854-855:

'It is no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. "<u>A lie is a lie</u>," no matter (360 US 270) what its subject, and, if it is in any way relevant to the case, the District Attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair'.

"The BOLO contained no discription of Mr. Horne's Vehicle."
This perjured testimony was proffered soley to create justification
at its inception, reasonable suspicion sufficient to warrant a stop
and seizure of Mr. Horne's vehicle and a subsequent search. Patrol-
women Crouser swore to the court that the BOLO announcement was
much more. Based on her testimony, the search and seizure of a gun
in Mr. Horne's van, and subsequent arrest were acts admitted into
evidence and used against him in trial court. Her testimony though,
was a falsehood.

It was error for the Court to rely on this perjured testimony.
It was error, if not <u>Prosecutor</u> <u>misconduct</u>, for the Government to
repeat the perjury in its briefs[1] and to rely on its veracity as
support for the States actions. Only through a issuance of certifi-
cate of appealability on the motion to vacate under 2255, can the
factual findings involving the BOLO be corrected. Once and for all,
the record in this matter must be rectified.

"It is the objective <u>reading</u> of the flyer or bullet-

in that determines whether other police officers

( 469 U.S. 233)

can defensibilibly act in reliance on it. It is

imperative that the facts be <u>judged</u> against an

objective standard.  Hensley, id. at 233.

<u>Foot note</u>

1. The Government is prohibited from submitting "fraudulent doc-
umentation" in the Governments briefs to the Courts. 18 USCS sec.
1001. See Brief of Appellee In The United States Court of Appeals
Third Circuit, Case No. 02-2649, page 13, 'In this case, the
Swatara Township police relied upon the articulable facts contain-
ed in a countywide BOLO announcement. The BOLO described a vehicle
matching the appellants'...

There is <u>not</u> a Scintilla of evidence, articulable facts con-
tained within the objective reading of the countywide BOLO announce-
ment, describing a vehicle matching the appellants[2] reasonable sus-
picion authorizing police to stop and seize said vehicle.

Petitioner relies on the case of United States V. Coward, 296
F.3d 176 (3rd. Cir. 2002) id. at 178 the Court Held; The Government
did not produce any evidence demonstrating the reason for the req-
uest to stop <u>Cowards Vehicle</u>. (emphasis added)(quoting United States
V. Robinson, 536 F.2d 1298 (9th Cir. 1976) id. at 1299, N2;

> N2 Although the Government noted under Robinson,
>
> "the officer who issues a wanted bulletin must
>
> have a reasonable suspicion sufficient to justify
>
> a stop", App. at 96, it did not advise the Court
>
> of the Governments necessity to produce such evi-
>
> dence.

United States V. Robinson, 536 F.2d 1298 (C.A.9, 1976) id. at
1299, Held; This appeal presents the question; can founded suspic-
ion, unlike probable cause, be based solely on the reciept by the
stopping officer of a radio dispatch to stop the described vehicle
without any proof of the factual foundation for the relayed mess-
age?  WE HOLD THAT IT CANNOT.

Foot note

2. The BOLO, and testimony of Patrolwomen Crouser, that a county-
wide BOLO was sent out to watch out for Mr. Horne's van, is attached
at the conclusion of this petition, exhibit A, and, Supp. App. 6,
lines 24-25.

The stop, seizure and subsequent search of the Petitioner's vehicle, where the firearm was seized therefrom, presents a clear challenge to the protections of the Fourth and Fourteenth Amendments. Asumming the stop of the vehicle in the first place was unconstitutional, then the search of his vehicle and the seizure of any contraband would be defined under the proverbial fruit of the poisonous tree doctrine. Florida V. White, 526 U.S. 559, 119 S.Ct. 1555 (1999), and all that flowed therefrom.

CONCLUSION

An enshrined principle in American Jurisprudence is the right of a Citizen is to be free from unlawful seizure, and not to have his property taken without just cause i.e., his vehicle. And whether the Police officer's actions was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. And not to have perjured testimony submitted to sustain justify said inception, in violation of the Fourteenth Amendment due process clause. It is not enough to merely cry out how valuable these freedoms are to all citizens. The judiciary must also take the action in defending such fundamental rights. All to often, courts simply dispose of evidential perjury and seizure issues without giving them appropiate consideration, perhaps thinking that claims of abuse of these rights are to excessive and rarely meritorious. The petitioner asks that this Court, and all Courts, to suspend this skepticism, and give this request for issuance of certificate of appealability the due consideration that it deserves. Upon reviewing the arguments contained herein, it will be clear that petitioner's Constitutional rights have been suspended in this matter. For these reasons, petitioner prays that this court grant issuance of certificate of appealability pursuant motion to vacate conviction under 2255. And discharge petitioner from unlawful custody.

And he will forever pray.

Respectfully

Antonio T. Horne S.

-10-

CERTIFICATE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _January 6,_ 2005. _Antonio T. Horne Sr._
(signature of Petitioner)

Pursuant 28 U.S.C. 1746, on this _6_ day of _January_, 2005, via U.S. First Class Mail, with Certificate of mailing requested, request for Issuance of Certificate of Appealability, will be placed in the institutions internal mailing system, to be delivered to, United States Circuit Justice Julio Fuentes , for the Third Circuit Court Appeals, C/o Office of the Clerk, U.S. Court of Appeals for the Third Circuit, 22316 United States Courthouse, Independence Mall West, 601 Market Street, Philadelphia, Pa. 19106. This satisfies the requirements of (Huston V. Lack, 108 S Ct. 2379).

Service by U.S. First Class Mail:

_Antonio T. Horne Sr._
(signature of Petitioner)

U.S. Attorney James T. Clancy
U.S. Federal Courthouse
Room 218
Federal Building
228 Walnut Street
Harrisburg, Pa. 17108

Antonio L. Horne Sr., Pro se,
41571-066, AK-3929
SCI Fayettee State Prison
50 Overlook Drive
LaBelle, Pa. 15450-9999

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           :
    Plaintiff                        :
                                              :
    vs.                              :   CRIMINAL NO. CR-00-274
                                              :
ANTONIO L. HORNE,                    :
    Defendant                        :   (WILLIAM W. CALDWELL, JUDGE)

**FILED**
**APR 0 9 2001**
PER _____
HARRISBURG, PA.    DEPUTY CLERK

## MOTION TO SUPPLEMENT THE RECORD OF THE HEARING HELD JANUARY 10, 2001

      AND NOW, comes the Defendant, Antonio L. Horne, through his attorney, L. Rex Bickley, and files this Motion to Supplement the Record of the Hearing held January 10, 2001.

      1.     On January 10, 2001 a Pretrial Motion Hearing was held before this Honorable Court.

      2.     During the hearing testimony was offered by the US regarding a Bolo that had been issued by the Harrisburg Police Department.

      3.     Although defense counsel did not offer the Bolo document into evidence at the time of the hearing, he would like to do so now.

      4.     A copy of the document is attached hereto and marked Exhibit "A".

      WHEREFORE, the Defendant, Antonio L. Horne, respectfully requests this Honorable Court to grant his Motion to Supplement the Record of the Hearing held on January 10, 2001.

                                    Respectfully submitted,

                                    L. Rex Bickley
                                    121 South St.
                                    Harrisburg, PA 17101
                                    (717) 234-0577
                                    (717) 234-7832
                                    Attorney for Defendant

A

LAW ENFORCEMENT RESOURCE NETWORK
DISPATCH COMMENTS INQUIRY
:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:=:
1002848                                                          HBG  AMG  HP

UPDATED      COMMENT                                                      SE
             COMP CALLED FROM 2664 WILSON FWY. SAID HER                   00
             COMMON-LAW, ANTONIO HORN BEAT HER AND THREATENED             00
             HER WITH A HANDGUN. SHE FLED HOUSE BUT HER                   00
             CHILDREN ARE STILL IN HOUSE. SHE WILL WAIT NEAR              00
             HER HOUSE FOR OFFICERS                                       00
             S-CLR                                                        00
             DCP6F NOTIFIED TO BE ON THE LOOK OUT FOR THIS                00
             SUBJECT.  DEFENDANTS WIFE LIVES AT 1075 "C" HURON            00
             DRIVE   HBG, PA. 17111                                       00
             THEY WERE ADVISED THAT WE HAVE CHARGES PENDING ON            00
             ANTONIO HORNE AND THAT HE IS TO BE 10-32.                    00
             THEY WERE ALSO ADVISED THAT THE DEFENDANT HAS A              00
             CHARGE OF UCR# 0100, IN THE PAST.......                      00
             ********  U S E    C A U T I O N  **********                 00
             FORENSICS NOTIFIED TO RESPOND...0209                         00
             U-25 CLR...WILL DO A SUP. REPORT                             00

=PT  1=DIS  3=NAM  4=UN  J=MEV  F=PRL  O=NOTIF  T=TMINQ  H S   M=MENU  E=EXI
S SHOWN · SELECT NEXT FUNCTION

EXHIBIT "A"

A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,
    Plaintiff

   vs.

ANTONIO L. HORNE,
    Defendant

:
:
:
:
:
:
:
:
:

FILED
HARRISBURG, PA

APR 1 0 2001

MARY E. D'ANDREA, CLER

CRIMINAL NO. 1:CR-00-274

(WILLIAM W. CALDWELL, JUDGE)

<u>ORDER</u>

AND NOW, this 10<u>th</u> day of April, 2001, after consideration of the within Motion to Supplement the Record of January 10, 2001, it is HEREBY ORDERED that the Motion is granted. The attached Exhibit "A" will be made a part of the record.

BY THE COURT:

WILLIAM W. CALDWELL, JUDGE
US DISTRICT COURT

A

1      children up the steps, smacked them a couple

2      times.

3  Q.  Officer, you referred to the time of 1:30 in

4      the morning.  Was that on the date of October

5      7, 1995?

6  A.  Yes, it was.

7  Q.  Did Miss Rodriguez appear to you to have any

8      injuries consistent with the story she was

9      telling you about being beaten with a gun?

10 A.  Yeah, she had a large lump with a laceration on

11     her forehead.

12 Q.  You said that she told you the trigger was

13     pulled several times.  Do you have any idea

14     what happened when the trigger was pulled?

15 A.  Nothing.  It clicked.

16 Q.  Did she tell you who had committed this act

17     upon her?

18 A.  Yes, Mr. Antonio Horne.

19 Q.  Was Mr. Horne at the residence while you were

20     there?

21 A.  No, he was not.  He had left.

22 Q.  What did you do from that point in your efforts

23     to find Mr. Horne?

24 A.  We had sent out a countywide BOLO to watch out

25     for Mr. Horne's van.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENTSPLY INTERNATIONAL, INC. and DENTSPLY
RESEARCH AND DEVELOPMENT CORP.,

      Plaintiffs,

      v.

HU-FRIEDY MFG. CO., INC.

      Defendant.

Case No. 1:CV-04-348

Honorable Judge Conner

**HU-FRIEDY MFG. CO., INC.'S MEMORANDUM IN RESPONSE TO PLAINITFFS'
MOTION TO AMEND COMPLAINT AND STRIKE JURY DEMAND**

Kara E.F. Cenar
Joseph E. Cwik
**WELSH & KATZ, LTD.**
120 S. Riverside Plaza, 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Robert S. Tintner
**Fox Rothschild LLP**
2000 Market Street, 10th Floor
Philadelphia, PA  19103
**Attorneys for Hu-Friedy Mfg. Co., Inc.**

## I.      INTRODUCTION

With respect to the Motion to Strike the Jury Demand, Hu-Friedy Mfg. Co., Inc. ("Hu-Friedy") has no objection to the Motion.   Furthermore, although Hu-Friedy has no objection to Dentsply dropping its damage claim, the damage claim should be dismissed with prejudice, with no right to later reassert any damage claim on the issues raised in the pleadings.  Finally, because this matter will now have a bench trial, Hu-Friedy assumes the current jury trial date of April 4, 2005 is no longer applicable, and a new bench trial date will need to be set.  In setting a new bench trial date, Hu-Friedy asks that the Court consider setting a trial date two months later than April 4, 2005 given the strong likelihood that this case will first be resolved by summary judgment as a matter of law under the "all limitations rule."

## II.      ALTHOUGH HU-FRIEDY HAS NO OBJECTION TO DENTSPLY DROPPING ITS DAMAGE CLAIM, THE DAMAGE CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

In its Motion, Dentsply seeks to drop its claim for damages.  While Hu-Friedy does not object to this dismissal of the damages claim, Hu-Friedy does request that the dismissal be with prejudice, with no right to later reassert any damage claim on this issues raised in the pleadings.[1] Hu-Friedy further states that if the Court is inclined for some reason to keep the damages claim in the suit, Hu-Friedy formally requests an extension of time to file its dispositive motion demonstrating that Dentsply failed to mark its alleged patented products with the '714 patent number.   Dentsply's  failure to so mark precludes Dentsply from recovering any damages (or

---

[1] Hu-Friedy notes that the Motion should be stricken on procedural grounds as it fails to comply with Local Rule 15.1(b) which requires Dentsply to provide the Court and Hu-Friedy with "a copy of the original pleading in which stricken material has been lined through and any new material has been inserted and underlined or set forth in bold type."  Local Rule 15.1(b).   Rather than comply with this Local Rule, Dentsply now forces the Court and Hu-Friedy to complete the burdensome process of comparing the original and amended complaint, word by word, and page by page, in order to determine all differences.

presenting any evidence)[2] of any alleged infringing activities occurring prior to the Complaint under 35 U.S.C. § 287. This potentially necessary extension is necessary because the current dispositive motion deadline is January 17, 2005 and Hu-Friedy expects that this present Motion concerning damages will not be ruled upon by that date.

### III. HU-FRIEDY REQUESTS THAT THE NEW BENCH TRIAL DATE BE SET SO THAT RULINGS ON SUMMARY JUDGMENT MOTION WILL OCCUR BEFORE PRETRIAL MATERIALS MUST BE PREPARED.

Assuming that the current jury trial date of April 4, 2005 is no longer applicable, a new bench trial date will need to be set. When considering a new bench trial date, Hu-Friedy asks that the Court consider the strong likelihood that this case will first be resolved by summary judgment. If the case is resolved on summary judgment, there will be no need for the Court and the parties to attend to all of the extensive pretrial materials required by the Court, such as trial exhibits, motions *in limine*, trial briefs, pretrial conferences and the pretrial memorandum.

In its summary judgment motion to be filed on January 17, 2005, Hu-Friedy will demonstrate that each claim of the at-issue patent requires that a "tip" be present in the accused devices, and that no tip, as defined by the Court, is not present in each of the accused devices, either literally or under the doctrine of equivalents.

Specifically, in the Court's *Markman* opinion, the Court defined the term "tip" as "a *separate* elongated attachment to be fitted to the connecting body." Hu-Friedy's accused device, however, consists of a single-piece connecting body that is always *integral* with the end region of the connecting body. As such, there is obviously no infringement, either literally or under the doctrine of equivalents, because Hu-Friedy's accused device is not equivalent to a *separate* tip.

---

[2] Although Hu-Friedy could and may also file this motion as a motion *in limine,* Hu-Friedy prefers to file it as a summary judgment motion to narrow the issues for trial sooner rather than later.

Instead, Hu-Friedy's accused device is the complete opposite structure, an *integral* connecting body.

With respect to the doctrine of equivalents, Dentsply's contentions are directly at odds with the well established "all limitations rule" which states that "[i]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve." *Jenkinson v. Hilton Davis Chem.*, 520 U.S. 17, 39 (1997)(emphasis in original.) The vitiation of a claim element has also been called the "all elements rule," and is to be determined by the court *as a matter of law. Id.* at 39. Here, applying the doctrine of equivalents would vitiate the *separate* tip claim limitation, among others.

In a case almost identical to this one, the Federal Circuit applied the "all limitations rule" as a matter of law and thereby rejected the argument that an *integral* structure can be considered equivalent to claimed *separate* structures. *See, e.g., Dolly, Inc. v. Spalding & Evenflo*, 16 F.3d 394, 400 (Fed.Cir. 1994)(holding that a patented chair construed by the court at *Markman* to consist of *separate* parts could not be found equivalent to the accused chair with *integral* parts). In short, *separate* pieces are not logically equivalent to a single *integral* piece. Instead, *separate* pieces are by definition the opposite of a single *integral* piece.

Furthermore, Dentsply's current contention that the *integral* end region of Hu-Friedy's accused device is equivalent to a *separate* tip has already been rejected by the Court in its *Markman* opinion. Specifically, the Court has already held that "The tip *is not* merely the region of a larger device" (Markman Ruling, p. 6). *See, Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1338 (Fed.Cir. 2004)("the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.")

4

Therefore, given the strong merits of Hu-Friedy's summary judgment motion, Hu-Friedy believes it would be prudent for the Court to extend the current trial date so that ample time exists for the Court to rule on summary judgment motions before the parties and the Court are furiously engaged in preparing all pretrial materials. Under the current scheduling order, the reply briefs to the parties' summary judgment motions are due on February 11, 2005, but all trial exhibits are due very shortly thereafter on February 18, 2005 and the pretrial memo is due on March 11, 2005, and the Court's pretrial conference is March 18, 2005. Accordingly, should this Court elect to proceed with a bench trial, Hu-Friedy proposes extending the trial date to on or about June 6, 2005 and the pretrial conference to on or about May 16, 2005. This revised schedule will presumably give the Court two more months of time to rule on summary judgment motions, before it and the parties have to engage in all of the necessary pretrial activities.

WHEREFORE, Hu-Friedy respectfully requests the following Order:

(1)    that Dentsply's Motion to Drop Its Damages Claim be granted with prejudice;

(2)    that Dentsply's Motion to Strike the Jury Demand be granted;

(3)    that assuming a bench trial will now proceed, that the trial date be set for on or about June 6, 2005, and the pretrial conference on or about May 16, 2005;

(4)    that, should the damages claim remain in this suit, that Hu-Friedy be granted seven days from this Court's order to file a motion for summary judgment on the issue of Dentsply's failure to mark its patented product under 35 U.S.C. § 287.

Dated: January 10, 2005

/s/ Joseph E. Cwik
Kara E.F. Cenar
Joseph E. Cwik
**WELSH & KATZ, LTD.**
120 S. Riverside Plaza, 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Robert S. Tintner

5

**Fox Rothschild LLP**
2000 Market Street, 10th Floor
Philadelphia, PA  19103
**Attorneys for Hu-Friedy Mfg. Co., Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of HU-FRIEDY MFG. CO., INC.'S MEMORANDUM IN RESPONSE TO PLAINITFFS' MOTION TO AMEND COMPLAINT AND STRIKE JURY DEMAND was electronically caused to be served through the Court's electronic filing system on this 10th day of January, 2005:

David Lehman
Harvey Freedenberg
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108

Dale M. Heist
Barbara L. Mullin
Steven D. Maslowski
WOODCOCK WASHBURN LLP
One Liberty Place
46th Floor
Philadelphia, PA 19103

/s/ Joseph E. Cwik

OFFICE OF THE CLERK

**MARCIA M. WALDRON**

CLERK

# UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA 19106-1790

TELEPHONE

215-597-2995

January 11, 2005

Mary E. D'Andrea, Clerk
Untied States District Court
P.O. Box 983
Harrisburg, PA 17108-0983

Re: United States v. Horne
(M.D. Pa. No. 00-cr-274)

Dear Ms. D'Andrea:


Pursuant to Rule 4(d), Federal Rules of Appellate Procedure, and Rule 3.4, Third Circuit Local Appellate Rules, we are forwarding the attached notice of appeal which was apparently filed with this office in error. See Rule 3(a)(1), Federal Rules of Appellate Procedure and Rule 3.4, Third Circuit Local Appellate Rules. The notice was dated January 6, 2005 and postmarked January 7, 2005.

This document is being forwarded solely to protect the litigant's right to appeal as required by the Federal Rules of Appellate Procedure. Upon receipt of the document, kindly process it according to your Court's normal procedures. If your office has already received the same document, please disregard the enclosed copy to prevent duplication.

Thank you for your assistance in this matter.



Very truly yours,

Marcia M. Waldron, Clerk

By:  /s/ Bradford A. Baldus
Bradford A. Baldus
Senior Legal Advisor to the Clerk

Enclosure
cc: Antonio L. Horne, Sr. (w/out enclosure)